CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

11/06/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

SEALED

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Cellular Telephone Number, 434-228-5148, Stored on Premises Controlled by T-Mobile

Case No. 4:18mj00096

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein by reference)

located in the _____ District of New Jersey, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 1512(a) | Witness Murder |

The application is based on these facts:
See Attached Affidavit (incorporated herein by reference)

☑ Continued on the attached sheet.
☑ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Received by reliable electronic means.

FBI Special Agent Matthew S. Marlowe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone *(specify reliable electronic means)*.

Date: 11/6/18

*Judge's signature*

City and state: Charlottesville, Virginia

The Honorable Joel C. Hoppe, U.S. Magistrate Judge
*Printed name and title*

SEALED

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

11/06/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(434)228-5148,** THAT IS STORED AT PREMISES CONTROLLED BY **T-MOBILE** | Case No. 4:18mj00096<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Matthew S. Marlowe, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(434)228-5148**, ("the Subject Phone"), that is stored at premises controlled by **T-Mobile**, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, New Jersey, 07054.

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **T-Mobile** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. Specifically, I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March 2012. I received initial training and instruction to become a Special Agent at the FBI Academy located in Quantico, Virginia, which included training concerning violations of the United States criminal statutes. I am currently assigned to the Richmond Division of the FBI, Lynchburg Resident Agency. I am presently and have been previously assigned to investigate a variety of criminal matters, to include violent criminal acts, gangs, and drug investigations. Further, I have experience and training in a variety of investigative and legal matters, including the topics of lawful arrests, the drafting of search warrant affidavits, and probable cause. While serving within my capacity at the FBI, I have authored search warrants concerning various federal criminal violations. I have investigated cases where electronic communications and cellular telephones have played an integral role in the investigations. Through experience and training received, I have become familiar with how the usage of electronic devices has become commonplace throughout the "criminal world." I have also become aware that information stored at the service provider facilities and on cellular devices themselves can assist law enforcement in criminal investigations.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1512(a) (Witness Murder); Title 18, United States Code, Section 1959 (Violent Crime in Aid of Racketeering); Title 18 United States Code, Section 1962 (Racketeer Influenced and Corrupt Organizations Act); Title 18, United States Code, Section 924(c) (Possession of a Firearm During a Crime of Violence) have been committed. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

7. On June 11, 2018, a federal Grand Jury indicted members of the Rollin 60s Crips street gang, the Milla Bloods street gang, and gang associates on violations of Title 18, United States Code, Section 1962 (Racketeer Influenced and Corrupt Organizations Act); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering), and a variety of other charges, including obstruction-related offenses. The Court issued arrest warrants for the individuals, and they were arrested. Those cases are captioned *United States v. Davis et al.*, 4:18-cr-11 ("Crips Indictment"), and *United States v. Anthony*, et al., 4:18-cr-12 ("Bloods Indictment").

8. The investigation revealed that on June 15, 2016, members of the Rollin 60s Crips street gang and Milla Bloods street gang coordinated and attempted to murder Dwight Montel Harris and Armonti Devine Womack, who are known as the "Philly Boys." Specifically, W-1, who was present and participated in the incident, has stated that members of both gangs arrived at North Hills Court in Danville, Virginia, planned to murder the Philly Boys has they stood in a nearby parking lot, covered their faces, armed themselves, and walked into the parking lot before firing repeatedly at the Philly Boys. W-2, who was also present, has stated that W-2 was standing

3

in the parking lot, talking to the Philly Boys, when the shooting occurred. Both W-1 and W-2 can identify some of the shooters. Womack was injured in the shooting.

    9.    The Danville Police Department interviewed Harris and Womack after the shooting. Charges related to this incident are included in the Bloods indictment, and the United States anticipates a federal grand jury voting to supersede the Crips Indictment to add similar charges. Both Harris and Womack are named victims in the Bloods indictment.

    10.    Based on this information, part of which was provided as witness testimony before a federal grand jury, the United States has repeatedly tried to locate Harris and Womack. Approximately a month ago, the United States re-issued grand jury subpoenas for both individuals, who were believed to reside mainly in Philadelphia.

    11.    On October 23, 2018, at approximately 4:58 p.m., Harris was shot and killed on the steps of an abandoned house at 629 Cabell Street, Danville, Virginia. Specifically, W-3 stated to Harris's parents in the hours rights after the murder (statements which w heard and audio recorded by Danville Police Department officers) that Harris had been contacted on his cellphone by an unidentified individual, requesting that Harris sell him/her a half pound of marijuana. Harris and the unidentified individual communicated by voice calls and text messages to coordinate the drug transaction. W-3 drove Harris to the location of the drug sale. W-3 further stated that at the location of the drug transaction, W-3 saw multiple young black males on the porch of an abandoned house and in the front yard. Harris walked up to the porch, "dapped" the individuals, and appeared to engage in a hand-to-hand drug transaction. At the conclusion of the transaction, multiple black males pulled out firearms and open fired on Harris, killing him. W-3 returned fire from his vehicle before, eventually, driving away from the scene. Ballistics

and firearms found at the crime scene corroborate W-3's statements, as do the statements of individuals who witnessed certain actions after the murder.

12. In addition, a reliable, longtime confidential informant has provided information to the Danville Police Department that he was with W-4. While W-4 was in the presence of the informant and several unidentified individuals, W-4 stated that his girlfriend's daughter set the drug transaction up that lured Harris to the steps of the abandoned house at 629 Cabell Street, Danville, Virginia, and that the daughter's boyfriend (an unindicted Milla Bloods gang member) and his friend (another unindicted Milla Bloods gang member) were two of the shooters. Another witness has told the Danville Police Department that Harris was murdered because he was a "snitch."

13. Harris's cellphone records show that he was communicating with only one cellphone number in the thirty minutes before the murder, corroborating W-3's statements about the how the "fake" drug transaction was arranged. This cellphone number is **(434)228-5148**, which registered to T-Mobile on the date of the murder. Based on the aforementioned, there is probable cause to believe that the owner or user of the Subject Phone could either be a witness or participant in the Harris murder. It is believed that any cellular device information, such as the subscriber and call detail records, to include historical cell-site location data, could assist law enforcement in determining who killed Harris.

14. In my training and experience, I have learned that **T-Mobile** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15. Based on my training and experience, I know that **T-Mobile** can collect cell-site data about the Subject Phone. I also know that wireless providers such as **T-Mobile** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Such cellsite data can provide indicate whether the cellphone (and hence its user) was present at a participate location at a certain time. Cellsite data can also be used to indicate the travels and residence of a cellphone user.

16. In addition, based on my training and experience, I know that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records (often called call detail records),

in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Subject Phone's user or users and may assist in the identification of any targets, co-conspirators, and witnesses.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

18. I further request that the Court direct **T-Mobile** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **T-Mobile**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*Matthew S. Marlowe*
Matthew S. Marlowe
Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on November 6, 2018.

~~Subscribed and sworn to before me on xxxxxxxxxxxxxxxxxxx, 2018~~

_____
UNITED STATES MAGISTRATE JUDGE